The main issue in this appeal is whether undisputed facts of this case prove that Mr. Jones committed a federal carjacking offense. And they don't. A carjacking is committed when somebody takes a motor vehicle from another person by means of force and violence or by intimidation, and the federal statute kicks in if the carjacker also has the intent to cause death or serious bodily harm at that time. Those three elements, the physical taking, the use of force or threats, and the intent to cause serious harm to the victim, all have to be connected in time and purpose. That's what Holloway makes clear. The force and intent elements of the statute necessarily modify the act of taking the vehicle. So the defendant's violence toward the victim and willingness to inflict serious harm have to occur contemporaneously with the taking and be directed to stealing the car. The next- Factual basis. He used the word purposely. The factual basis the defendant signed says purposely. Purposefully with respect to what? Using force? To ran over the victim's body. Correct. So purposeful use of force is not what we're talking about. What Holloway is talking about is a nexus between the use of force and the intent to cause serious harm and the actual taking of the vehicle. And in Holloway, while Holloway focuses on the intent to cause serious harm or kill the victim if necessary- What do you do with the paragraph, with the, or alternatively if unnecessary to steal the car? Correct. How do you handle that that's in Holloway? So in Holloway, the whole idea behind Holloway is deciding whether it's necessary for someone to have the intent, that serious intent, no matter what happens, whether the victim relinquishes the car or not. And that if unnecessary alternative is basically saying that even if somebody goes up, steals a car, and they shoot the victim in the head, and they don't have any intention to wait and see, well, will they give me the car first, that satisfies the intent. In that case, the petitioner had tried to argue, basically, that the intent couldn't be conditional, that the intent had to exist no matter whether the victim gave the car up or not. And actually, Justice Scalia dissented in that and said he believed that the intent had to be unconditional and that the defendant had to intend to hurt the victim no matter what. And the court actually held that no, in the event that the threat is, I will kill you if you don't give me your car, and the victim gives the car up, that is sufficient to satisfy it if the evidence proves that the person would have killed them or hurt them had they not relinquished the car. And so the focus of Holloway was on that intent element, but in Holloway's decision, if you look at the language, it presupposes this nexus between the use of force and the taking of the vehicle. It says that there is a precise moment that we have to look at when the vehicle is taken by force or the victim is forced to relinquish the vehicle through intimidation. And it's that moment we look at to discern the defendant's intent. And that's what makes clear that these three elements, this taking, the force, and the intent behind the force, all have to be connected in time and purpose. Well, this wasn't a whole lot of time. And you never know what's in someone's mind except to the extent they confess. So this person pled guilty. That kind of helps you know what's in their mind. But also, this wasn't like, you know, hours later, he came back and took the car or something like that. Yes. This was all boom, boom, boom, boom. Why isn't that enough? Because I think the same is true in, if we look at Harris and Applewaite, the same idea is true. There was this succession of the two people were together, the defendant inflicts serious harm or death on the victim and then takes the car afterward. But doesn't run him over after taking the car. The aspect of running him over after taking the car, the taking has occurred at that point. It's completed. At that point, he has taken control. But as to the why taken. I'm sorry. You're debating why it was stolen. You're debating what the connection is between all of this. And he was attacking him before and after and using the car to attack. Why is that not relevant? So to be clear, and Harris made this clear, the why of why he took the car is not part of the inquiry. The question that we're talking about is why he used the force and the timing and the purpose behind the force and the intent in that force. And this is nearly identical. I mean, this is so this court in Harris adopted Applewaite's reasoning and explained this that case was totally well, it said that the case was it was identical or similar to Applewaite in important respects. And among those, it said one of the important respects where Harris paralleled Applewaite is that the fact that the evidence of force used against the victim did not show that the force was the means of stealing the car or was used to get control of the car. And so Harris recognized that this force aspect is part and parcel to the Holloway inquiry. OK, but so even if you argue when the victim was taking stuff out of the trunk, that that was on top of him, he's cussing at him and grabbing the keys out of his pocket. Why doesn't that at least suggest or support some notion of what's in his mind? I think it's not limited to just what's in his mind, it's the use of force and what's in his mind, the intent to harm. OK, well, he's clearly using force. He's shooting him. I don't know that there's anything more forceful. Well, so he's shooting him in the ditch and cussing at him and grabbing his key all at roughly exactly the same time. Why isn't that enough to at least support his mind and support a guilty plea? And we're talking about a guilty plea. Because Harris stated that without pure conjecture, we can't decide based simply on the fact that somebody shoots and kills someone and then outside of their car and then takes their car, that that necessarily establishes these elements. But there wasn't any cussing and talking in that case, right? In that case, the court didn't even credit the defendant's explanation of why he shot the person or anything like that. And I'm not sure with respect to the cursing at him, I think that only supports the position that there is no nexus between the taking, the subsequent taking, and the act of violence. I mean, the parties agree, the government recognizes, everyone agrees that the motivation behind the use of force and the intent was not related to stealing his vehicle, but was related to the previous encounter he had had and retribution for having brought him to this location where he was ambushed. And so that disproves, unlike in Harris where, you know, they just looked for was there sufficient evidence, here we actually have facts that disprove that nexus between those elements of the crime. When, in your opinion, would a person then take control of the car for purposes of finding out if he had the requisite mental state contemporaneous with the taking? When would you argue that moment is? In this factual scenario, I would say when he gets in the vehicle and takes it away. And then you would have us discount everything that happened before then? The cursing, the taking the keys, the running? Not discounting it. I think it's looking at the totality of the circumstances. I mean, for example, if there was a scenario like we've seen before where if somebody is standing outside of their car door and someone shoots them and jumps in the car and drives away, that is contemporaneous taking with a use of force. Here we have two people who volitionally exited the vehicle. He attacks him outside. He doesn't drive away in the vehicle after initially attacking him. He continues his attack. And again, as we know, the reasons for that were unrelated to taking the car and then after the fact takes the keys and leaves. That distinguishes this from the typical carjacking we see. And I think that's why these cases recognize that these fact patterns where carjackings have been pursued and have been reversed are unusual fact patterns because we know what a carjacking typically looks like. It's an exchange, basically, of force and violence or intimidation in order to take the car. And here it's a sequence of events in which there is an attack. It's a hypothetical. What if someone was stealing Mr. X's car at the mall, got in it, starts riding away and Mr. X comes out of the mall and sees that and shoots at him and he shoots back? How would we construe that shooting? The shoots back? If he's stealing the car. If the defendant is stealing the car. If there is a hindrance to him taking the car away, I think that that would presumably because that's a use of force in order to take the car away. And if he's being stopped by the owner and prevented from taking the car and uses force to overcome that resistance, that would be a typical robbery carjacking in that scenario. Okay. So the force swirling around the car you don't think is enough. All of this force, force, car, force, force wasn't enough in your opinion. The force that follows, so the driving over of the victim with the car, that is already after the taking has been completed. The victim at that point is incapacitated. There is no, the taking has been completed in that moment in this factual scenario. And so at that point, just- Did Jones know that he was paralyzed, that the victim was paralyzed at that point? Because he knew that he didn't kill him, right? So how does he know that he can't get up and start running after him? I don't think we have facts one way or the other to show that, but the facts are that at that point he was incapacitated. So he's on the ground. I mean, unless- But how do you know? I mean, I just watched a show not long ago where somebody was, I don't know, multiply stabbed and this and that, and the guy thought she was dead and she was able to get up and run out. So it's not for sure if you're the murderer to know what happened to the person. So why isn't that part of this? Well, I think there's two issues with that. One is that, in theory, if that were true, that he thought, okay, well maybe he's up and I'm just going to, you know, make sure- That's why I ran him over again. But there's one problem. The first issue with that is that the taking has, he's taking the car and he isn't using force or intimidation at that point to take the car because that's not necessary. That's not toward the car. But I think the more important point is that the case law makes clear we cannot speculate and conjecture about things that are not in the record and things we don't have information about. There's reasonable inferences and then there's conjecture and speculation, and that's what Epplewaite and Harris- But he used force to get the keys. He took the keys from the victim after- Why isn't that part of the stealing? It's kind of hard to steal a car if you don't have the keys. In Harris, the defendant necessarily had to take the keys from the victim after shooting and killing him outside of the car. And same with Applewaite, in Applewaite, which Ben Harris adopted- Yeah, but here the force was being used as the keys were being stolen, as opposed to after the person was dead. Well, I believe in the factual basis it paints a picture of the assault is complete, he says some words to him, grabs the keys out of his pocket, and leaves. So there's- he's not actively attacking him in order to take the keys from him. He has completed his attack on Z.S. at that point. Counsel, your argument rests largely on Applewaite, which I believe is a Third Circuit opinion. Is there a case you can cite to us where this court has adopted the reasoning of Applewaite? Because it seems like Harris doesn't. It's a- ships in the night to a certain extent. Is there a case where this Court comments favorably on Applewaite and adopts its reasoning? In Harris, I do- I would disagree, Your Honor. I think in Harris, this Court did largely adopt the reasoning of Applewaite. And just to direct the Court to, you know, specific quotes, at 474- or, sorry, 472, they discuss the Third Circuit's holding. And then at 474, the Court says the evidence adduced in this case parallels that in Applewaite in important respects and highlights this lack of a nexus between the use of force and the- and the intent to kill next to the actual taking. And it even says, although intent to kill or harm may be reasonably inferred from the evidence of violence or threat present in both cases here due to the shooting, the element of contemporaneousness between the taking and the intent to kill or harm cannot be shown when no evidence exists in the record to reasonably determine that element beyond a reasonable doubt. And the Court also says, you know, again, comparing the facts in Harris to Applewaite, the Court says it is uncontested that Harris took the victim's car after the victim was shot, but that does not establish that the force was used to get control of the car. You don't think- I think you've already said you think that those cases are indistinguishable on their facts, at least for purposes of this case. Correct. Correct. Okay. But if we just- if we only look at Holloway, which is the Supreme Court case, it says at the moment the defendant demanded or took control over the driver's automobile, the defendant possessed the intent to seriously harm or kill the driver if unnecessary to steal the car. Why isn't there absolute evidence of that? Even all the things you said, you don't doubt that he's getting ready to run over the victim. Okay. So why isn't that taking the car to seriously harm or kill the driver if unnecessary to steal the car, but with intent to harm the owner of the car, the driver of the car? Because the idea behind Holloway is talking about the intent being directed to stealing the car. And in saying it doesn't matter if you would have killed him anyway, or if you only would kill him if you got the car. The goal has to be- the goal of the intent and the goal of the force still has to be the actual stealing of the car. And in Holloway, I mean it says, it directs the fact finder's attention to the defendant's state of mind at the precise moment he demanded or took control over the car by force and violence or by intimidation. So there is a precise moment, an identifiable point in time, where there is this taking of the car by force or taking of the car by threatening force. And here those are not occurring contemporaneously. It's not an exchange of force for the car. It is an assault for sure. There is a taking of the car. But in Harris and Applewaite, both of those cases had a taking, an intent to seriously harm or kill, and a use of force or intimidation. Okay. Your time has expired, but you've saved time for a while. Thank you. Thank you. So we'll now hear from Ms. Schiffman. May it please the Court. Ms. Schiffman, on behalf of the United States, solemn declaration in open court has a strong presumption of verity. Your Honors, and Judge Haynes, as you previously stated, this was a quick, continuous course of conduct. If you look at page 130, the defendant hit the victim over the head with a gun, shot him in the back, put the gun to his head, pulled the trigger, rifled through his pockets, took the car, and rolled over the victim. And at the time of his plea, the Court explained the critical elements of intent that was required at the time that the defendant took the victim's vehicle. At page 203, the Court explained that he intended to cause death or serious bodily harm to the victim and possess that intent at the time that he took the car. Mr. Jones, at page 203, indicated that he, one, understood the element of intent, and that at page 210 and 211, he pled guilty to it. There is no error in this case. This is supported by Holloway, Frey, and Harris. Under Holloway, it was previously discussed that it required a nexus between the intent to cause death and harm, as well as at the time of the taking. This is also supported by Frey, where Frey goes further and explains that in order to determine what the defendant's intent was, we can look to reasonable inferences by looking at what happened before and after the taking. What do you do with your opponent's rather consistent argument that all this shooting and stabbing and doing whatever else was done had nothing to do with the car? How do you respond, and therefore, is not a carjacking? How do you respond to that? Well, I think first, Your Honor, that people can have multiple intents during one continuous course of conduct. I agree, he probably did have the intent to kill the victim for something separate, but he also had the intent to cause harm or death to the victim at the time that he took control of the vehicle. And what we look at is this isn't an hour, this isn't 30 minutes or 15 minutes. This is a quick, continuous course of action. From the time that the victim is at the rear of the vehicle, the defendant is hitting him over the head with the gun, shoots him, because in order for him to gain access to the car, he has to get the keys. In order to get the keys, he has to harm the victim. The victim is not just going to let him have the keys out of his pocket. So he shoots the victim in the spine. As far as I can tell from the facts of this case, he doesn't know that the victim is paralyzed. So you can reasonably infer from the defendant's actions, they demonstrate his intent is to get the keys, but in order to do so, he has to harm or kill the victim to get it. He's shot him in the spine, puts the gun to his head, pulls the trigger again, it doesn't go off. He goes into his pockets, this continuous course of conduct. And how we know he intended to cause harm or kill the victim at that time is in order for him to get the car to roll over the victim, he has to take the keys. So at that moment, when he is taking the keys, at the time of the taking, even though while he's still armed with a firearm, he could use it in any other way to harm the victim. It was unnecessary, at least he thought it was unnecessary at that time under Holloway. But he grabs the keys, gets in the car, and the first thing he does is roll over the victim. In looking at his actions leading up to taking the keys, his intent is to kill or harm the victim based on his actions after, which is rolling over the victim with the vehicle. But your opponent says that doesn't matter because that doesn't have to do with using force to steal the car because the car is already stolen. How do you respond to that? I believe under Frye, which tells us to look, in order to determine what the defendant's intent was, you look to his actions both before and after, which makes it very important as to what his actions were after the taking of the keys, really. At the time that he takes the keys, his intent is to cause harm or kill the victim based on his actions afterwards. It wasn't to leave, it wasn't to drive in the other directions, it is actually to harm the victim. So his intent at that time is to harm or kill the victim at the time that he takes control of the keys. The facts that we've just laid out, as the court can find on page 130, is distinguishable by Harris. In Harris, they had no evidence other than what the defendant's self-serving statement was to determine the circumstances of how the defendant came in control of the car. However, the court in Harris does cite multiple cases that uphold carjacking convictions where the intent element was met. One of those cases is the Adams case, where it said the physical touching of a victim with a weapon is per se sufficient to support a finding that violence is imminent or physical harm is imminent to the victim and that the defendant intended to act violently. That finding in Adams is apparent and present in the case against Mr. Jones. Mr. Jones physically puts a firearm to the victim, to his spine, to his head, which based on Adams says this is per se sufficient to show that physical harm is imminent to that The factual basis in this case not only states the elements of the crime of carjacking, but the defendant's actions demonstrate what his intent was at the time and he possessed the intent to kill or harm the victim at the time that he took control of the victim's keys. As such, because the factual basis is sufficient to support a conviction for carjacking, the violation would also fail. Because we have the defendant's actions before and after showing his intent that he possessed at the time that he takes control of the vehicle, he discharged the firearm and I don't think there's any disagreement on what the 924C depends on. It depends on what we've been talking about the rest of the time. Yes, Your Honor. Okay. However, based on the fact that the district court did not err in finding that the factual basis and the facts of the defendant's actions leading up to the time that he took control of the keys, again, in a quick, continuous course of conduct, shows what the defendant's intent was, and that was to harm or kill the victim at the time that he took control of the keys. And it is demonstrated by shooting the victim in the back, hitting him over the head with the gun, trying to shoot the victim in the head, and then immediately running over him with that car. And, again, in order to run over the victim with the car, you have to take the car. In order to take the car, he had to get the keys, which is why he didn't stop by just hitting him over the head. That's why it shows that his intent was not just to hurt the victim based on some other feeling that he had previously. His intent was to gain control of that vehicle, and his intent was to harm the victim and kill the victim at the time that he took control of that vehicle. At his guilty plea, he was explained that critical element. He indicated he understood it, and he pled guilty to it. But I think your opponent is saying you have to want to intend to harm to steal the car, not just while stealing the car or relating to the car or something like that. But if Mr. X says the only way I can get your car is to shoot you, then that is the carjacking. And, Your Honor, I believe under Holloway, that's why the conditional intent is important here because in this case, it ultimately was unnecessary, but Mr. Jones did possess the intent to harm or kill the victim at the time he took control of the keys, which is when he took control of the vehicle. He just didn't have to do it at that time. Would your argument go further and say that the intent was before he took the keys? I believe his intent was maintained throughout the entire course of criminal conduct, Your Honor. But before, at the time he took the keys, which he realized he no longer needed to pull the trigger can unjam the gun because the victim didn't fight back at that time. Sometimes they do. I believe there was an art, Judge Haynes, I believe he gave an example of the victim shooting back. However, in this case, it was unnecessary for him to go further in harming the victim or trying to kill the victim at the moment that he took the keys from him, which is what Holloway says would still meet the intent element. It's just the defendant has to have the intent to cause harm or kill the victim at that time, whether it's necessary or, in this case, unnecessary. Well, you think that the fact of the running over is related. I believe it is. Can you explain that again for us? Yes, Your Honor. I believe that he maintained the intent to kill or harm the victim throughout the entire course of conduct. However, what I believe, based on Frye and looking at his actions before, but also looking at his actions after, in order for him to run over the victim, he has to gain control of the car. In order for him to gain control of the car, he has to get the keys. His intent at the time when he is taking control of the keys is to kill or harm the victim. And you can use his actions that demonstrate his intent under Frye by looking at the fact that the first thing he did when he got in that car was not leave or anything like that. He specifically rolled over the victim's torso and his legs, causing further harm to this victim. And make it impossible for him to jump up and grab him out of the car or something like that. Yes, Your Honor. Right? So, I mean, it relates a little bit to my maul hypothetical, although I know they're a little different. Yes, Your Honor. Okay. Do you want to talk about the sentencing? Your opponent didn't have a chance to address that, but she may want to do it on rebuttal, so. Yes, Your Honor. Your Honor, with regards to the sentencing, the court did, in fact, on page 223, do an independent assessment and a review of the facts, the PSR, both briefs that were submitted by both the government and the defense, as well as the factual basis and other arguments that were made at the time of sentencing, specifically the victim impact statement that was made as well, and the arguments on behalf of defense counsel in support of Mr. Jones. The court did go through the 3553 factors. On page 292, it talked about the reasons for its sentence being the adequate deterrence to criminal conduct, victim impact, seriousness of offense, promoting respect for law, just punishment, and protecting the public. In this case, the victim was permanently paralyzed. He was shot in the spine. He had multiple fractured ribs. He had a broken ankle. I believe the district court went through the 3553 factors, reviewed all of the facts and evidence before it in order to determine what a just sentence would be in this case. I do not believe that in the court's discretion that they went above and beyond what was necessary in this case, and I don't believe that this sentence was out of the ordinary for a case like this. And I believe that they based it based on the factors that were in front of the court as well as the facts and evidence that they had before it. I believe it was an adequate sentence. And if there are no further questions from the court, I would ask that the court affirm for these reasons. Do you have any other questions? No. Do you have any other questions? Okay. Thank you. All right. Ms. Hughes. Did I get it right this time? Yes, Your Honor. Okay. I really did. I can't respond to anything. Don't worry. Just to address a few points made by the government in their argument. First of all, a lot of the government's argument does rely on the exact type of conjecture and speculation that Harris says we can't rely on, trying to decipher, well, what was the ultimate goal? Was the ultimate goal to run over him with the car, and so therefore there was a series of events that needed to occur before then? But aren't you always having to give some, I mean, I wouldn't say conjecture, but as I said, you can't read somebody's mind. You can only do your best in determining mine based on what they do. Right. But there's no facts here to support that that was the ultimate goal. But I think even if there were, even if there were sufficient facts to say his endgame was to run over this guy with the car, and so therefore he needed to get the keys, get in the car, drive over him. Even if that were true and there was sufficient facts for that, that reverses the idea behind the carjacking statute. I mean, the force has to be what effectuates the taking. It's not the other way around where a taking is conducted in order to exercise force on a victim. And I think the government's reliance on that Frye case is misplaced because in Frye, and I'm not sure what exact facts about before and after the government's, you know, focusing on, but in Frye, the defendants forced the owner, the driver of the vehicle, into the trunk at gunpoint. And so there was a simultaneous taking of the vehicle by use of force where their other actions showed that they would have used the gun if she had said no and refused to get in the trunk. And so that is the type of convergence of these three elements that a carjacking requires. Do you want to talk about the sentencing? Sure. It's fine if you want to keep talking about the guilty plea, and you've made good arguments on that. But I just want to make sure we cover everything that's in your report. Yes. I do. Just one last point on the factual basis. I do briefly want to point the court's attention in Harris. I know, Your Honor, Judge Englehart was asking about specific language holdings. At 475, the court specifically said the government must show a nexus between the intent to kill or harm and the taking of the car at the precise moment of the taking of the threat to do so. And later in the opinion, the court didn't rely on this. The court independently found insufficient evidence. But the court also noted that the jury had found a voluntary manslaughter as the specific finding of what that conduct constituted. And so in that case, when the court was discussing how that supported its conclusion, it specifically noted that the jury necessarily concluded that there was no nexus between the killing and the taking of the car so as to effectuate a robbery, because that would have required a finding of, I forget if it's first or second degree murder, but a killing in the course of a robbery. And so I think that further shows that they're recognizing the lack of a nexus between the robbery and the actual killing of someone is relevant. Well, really quick. So Jones told the victim to stop the car at this intersection, which was interesting to me. It wasn't in front of an apartment or I don't know. It just says an intersection. So why wouldn't the intent be there to do the carjacking? He told him to stop and then immediately assaults him and immediately does everything else that we've talked about. Well, I think first of all, he tells him to stop and doesn't immediately assault him. They get out of the car and it's outside the car that it happens. But also the place where he told him to stop in the Hollygrove neighborhood, that's where he was moving to. And in fact, actually in the sentencing transcript, it appears that they had arrived at the place where he was moving to, that the victim was helping him move. And I believe the victim even says that they had arrived at his grandmother's house or wherever he was moving. And so there was no indication that that instruction to stop was a threat or a forceful stop. And in fact, the victim gets out and starts unloading his belongings. And so I think the record shows that that was not part of any kind of forceful taking. Just briefly for the sentencing arguments, I think that the primary glaring issue here is that, you know, this is not a mere disagreement with the court's sentencing determination. The issue is that, one, the court focused exclusively on one sentencing factor and didn't consider all of the other factors presented in all of the other information. And I think more glaringly, the justification the government provided for its requested sentence and then that is the exact sentence the court imposed, that justification didn't justify the degree of variance. I mean, this was a significant upward variance, of course, but the only justification provided by either was, well, this doesn't account for the fact that he attempted to kill the victim. But then applying that attempt in rare cross reference, even the government recognized that would result in a 22 to 26-year sentence. And then the court didn't provide an explanation for why there was that additional variance above that. And that is my time unless there are further questions. Okay. Thank you. Thank you very much for your argument. Both sides. I appreciate your argument. The case is now under submission.